# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **SHOPIFY INC.**, a Corporation organized under the laws of Canada,<br><br>Plaintiff,<br><br>v.<br><br>**AMIR MOKRIAN** (a.k.a. Clayton Burns, a.k.a. Clayton Burnz, a.k.a. Clayton Barns, a.k.a. Clayton Barn), an individual,<br><br>Defendant. | **Case No.:** 6:23-cv-2266<br><br>**COMPLAINT FOR VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT - 17 U.S.C. § 512(f)**<br><br>**PERMANENT INJUNCTIVE RELIEF REQUESTED**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shopify Inc. ("Shopify") hereby alleges for its Complaint against Defendant Amir Mokrian (a.k.a. Clayton Burns, a.k.a. Clayton Burnz, a.k.a. Clayton Barns, a.k.a. Clayton Barn) on personal knowledge as to its own actions and on information and belief as to the activities of others, as follows:

## NATURE OF ACTION

1. Defendant Mokrian has repeatedly harassed, and continues to harass, Shopify merchants and Shopify itself through knowingly false allegations of copyright infringement. This lawsuit seeks to halt that misconduct and hold him accountable for the damage he has caused.

2. In 1998, Congress enacted the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA"), to provide a framework for addressing claims of

1

online copyright infringement. In general, the DMCA immunizes online service providers from claims of copyright infringement based on materials uploaded to the services by users, if the services promptly remove allegedly infringing materials upon receipt of "takedown notices" from copyright holders. Through these notices, the content of which is statutorily prescribed, copyright holders are able to secure the prompt removal of allegedly infringing materials from online services without the need to prove a claim of infringement in court. Indeed, where a takedown notice meets the statutory requirements, a service provider <u>must</u> expeditiously remove alleged infringing content in order to claim the DMCA's immunity. Service providers thus have strong incentives to promptly remove content identified in facially valid takedown notices. Users that receive takedown notices that the user contends are incorrect may file a prescribed counter notification and have the disputed content restored, but only after a two-week waiting period.

3. The DMCA's notice and counter-notice approach, and in particular the statute's mandate of expeditious removal and delayed restoration of content, has made the statute ripe for abuse. Malicious actors, like Mokrian, can send takedown notices making bogus claims of infringement and thereby secure the removal (at least temporarily) of content to which they object or content with which they compete.

4. Congress was aware that takedown notices could be abused to secure the removal of perfectly legitimate content. Accordingly, it included a provision

in the DMCA authorizing those aggrieved by false notices to bring an action against the sender for damages. This is such an action.

5. Defendant Mokrian has sent Shopify dozens of DMCA takedown notices littered with misrepresentations, claiming that materials Shopify merchants have posted to their online stores supposedly infringe his copyright. But Mokrian does not actually own the copyrights to which he claims ownership in these notices. Indeed, much, if not all, of the information Mokrian has supplied in the notices are false, and Mokrian has submitted them to Shopify as part of a scheme to harm competing Shopify merchants and Shopify itself.

## PARTIES

6. Plaintiff Shopify is a corporation organized under the laws of Canada, with its headquarters in Ottawa, Ontario, Canada. Shopify is a cloud-based, e-commerce platform enabling all manner of merchants to operate and promote their businesses online.

7. Defendant Mokrian is an individual who has referred to himself as Clayton Burns, Clayton Burnz, Clayton Barns, and/or Clayton Barn in dozens of takedown notices that he sent to Shopify. Mokrian resides in Orlando, Florida.

## JURISDICTION AND VENUE

8. The Court has original and exclusive jurisdiction for this matter under 28 U.S.C. § 1338. This is a civil action arising under an Act of Congress governing copyrights, specifically under 17 U.S.C. § 512(f) of the Copyright Act.

9. The Court has personal jurisdiction of Mokrian, a resident of Florida.

10. Venue in this judicial district is proper under 28 U.S.C. § 1400(a). This is the district in which Mokrian resides or may be found.

## BACKGROUND

### Shopify and its DMCA Processes

11. Shopify is a provider of online services. It offers a platform to millions of merchants through which the merchants can operate online stores. Merchants upload content for those stores to Shopify's network. Shopify hosts that content and makes it available to the online world. Shopify is thus a "service provider" as defined by the DMCA.

12. In accordance with the DMCA, Shopify has registered an agent with the United States Copyright Office to receive notices of alleged infringement from copyright holders.

13. If a copyright holder believes that a merchant has uploaded to the Shopify platform content that infringes their copyright, he may invoke the DMCA's procedures by sending a takedown notice to Shopify's registered agent detailing the alleged infringement. To facilitate the submission of takedown notices, Shopify allows any copyright holder with a Shopify account to access a form on the Shopify website at https://help.shopify.com/en/legal/dmca#/login, where they can easily input the information the DMCA requires for a valid takedown notice (17 U.S.C. § 512(c)(3)(A)):

(i) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address,

           telephone number, and, if available, an electronic mail address at which the complaining party may be contacted;

(ii)    Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

(iii)   Identification of the material that is claimed to be infringing and information reasonably sufficient to permit the service provider to locate the material;

(iv)   A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;

(v)    A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; and

(vi)   A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

14.    As the host of millions of online stores from merchants all over the world, Shopify receives thousands of DMCA takedown notices each month. Shopify invests heavily in engineering, customer support and computer systems

to process these notices. In the vast majority of cases, when Shopify receives a notice that substantially complies with the requirements for a DMCA takedown notice, it promptly disables access to the allegedly infringing material. For Shopify merchants, that may mean that they can no longer sell allegedly infringing products through their stores, or use allegedly infringing content to promote sales.

15. If a Shopify merchant disputes a takedown notice, it can object through submission of a counter notification to Shopify's DMCA agent. But under the DMCA, that does not cause the immediate restoration of the disputed content. Rather, to obtain the DMCA's protections, Shopify must typically wait two weeks following receipt of a counter notification before permitting the content to return to the platform. In the interim, the disputed takedown notice can deprive the Shopify merchant of the ability to sell products or use content.

16. Under certain circumstances, a takedown notice can even result in the complete termination of a merchant's online store. Like all DMCA service providers, Shopify is required to implement a policy under which those who are "Repeat Infringers" lose access to the platform. Under Shopify's policy, a takedown notice results in a "strike," and an accumulation of strikes over time results in termination. A merchant that receives a takedown notice may submit a counter notice and lift the strike. But for unsuspecting merchants who may be unfamiliar with the DMCA, a sudden onslaught of takedown notices can result in the termination of their entire store under Shopify's repeat infringer policy.

## Abuse of the DMCA Takedown Process

17. The DMCA recognizes that online service providers lack the resources, information, and authority to adjudicate competing rights claims. Even were it possible for online service providers to decide which claims are valid, the sheer volume of notices makes investigation of each one practically impossible. As is common among service providers, Shopify relies on a mix of both human and automated review of notices, and it relies on the DMCA's prohibition on misrepresentation in takedown notices to limit abuse.

18. Unfortunately, unscrupulous individuals are increasingly seeking to exploit the DMCA takedown process for anti-competitive purposes or reasons of animus. These individuals know that service providers that comply with the law, like Shopify, promptly remove allegedly infringing content in response to DMCA takedown notices, that they assess strikes to the alleged infringers, and that they terminate the accounts of users who accumulate strikes. With that knowledge, these individuals send seemingly valid, but bogus takedown notices causing the removal of legitimate products and sometimes the termination of entire stores. While Shopify works to prevent this sort of abuse, and it promptly honors valid counter notices, it may be unable to prevent real harm to merchants in the face of determined attacks.

## Defendant Mokrian's Illegal Behavior

19. Mokrian sent over six dozen fraudulent takedown notices to Shopify, targeting the stores of merchants who compete with his own online store.

20. As part of the scam, Mokrian used fake identities to create a web of fake Shopify accounts. Mokrian sent his fraudulent takedown notices to Shopify through these fake accounts. On September 27, 2023, Mokrian created a Shopify account under the name "Clayton Barns," providing Shopify with the email address: "themanclayton@skiff.com." On September 29, 2023, Mokrian created a Shopify account under the name "Clayton Burnz," giving Shopify the email "claytonburnz@skiff.com." On October 2, 2023, Mokrian created another Shopify account under the name Clayton Burnz, this time providing the email "claytonburnzs@skiff.com." On October 13, Mokrian created a Shopify account under the name "Clayton Burns," using the email "claytonbursz@skiff.com." On October 17, 2023, Mokrian created another Shopify account under the name "Clayton Burns," giving Shopify the email "claytonburn@skiff.com." On October 19, 2023, Mokrian created a Shopify account under the name "Clayton Burn," providing the email "claytonbur@skiff.com." Mokrian confirmed that he actually controlled these email addresses by responding to email inquiries that Shopify sent to each.

21. After creating these Shopify accounts, Mokrian used the Shopify webform to submit DMCA takedown notices to Shopify, attesting that material uploaded by Shopify merchants and hosted by Shopify itself violated his copyrights.

22. Through Shopify's webform, he completed all of the technical requirements required by the DMCA for notice. He listed his various aliases as

8

the copyright owner and provided a link to the allegedly copyrighted work and for the allegedly infringing material.  He professed a good faith belief that the allegedly infringing material was not authorized, swore under penalty of perjury that the submitting party was the copyright owner (or was authorized to act on the owner's behalf), and attested that all information was accurate.

23. Mokrian's representations, made in the guise of his fraudulent accounts, were themselves fraudulent.  Mokrian used fraudulent DMCA notices to target Shopify stores that sold mouthguards.  For example, under one of his accounts, he alleged ownership over "custom content" depicting a snore-reducing mouthguard from a store called "Snore Destroy," and accused a variety of Shopify merchants of infringement that also sold mouthguards, including a Shopify merchant operating under the name "Turkus."  Simultaneously, from his other account, he claimed ownership over an image of a mouthguard sold by "Turkus," but this time asserted that "Snore Destroy" was the infringer.  In other words, Mokrian falsely claimed to own copyrights that were actually owned by another merchant, falsely asserted infringement claims against other merchants based on copyrights that were not his, then falsely claimed the copyrights of the merchants he had wrongly accused and falsely asserted infringement claims back against the original party whose copyrights he lied about owning in the first place.

24. Mokrian's behavior towards a Shopify merchant selling foot insoles was similar.  He falsely claimed to own copyrights in material posted to a Shopify store called "rizzsoles.shop" that sold foot insoles.  He then sent takedown notices

9

to a Shopify merchant called "rizzsoles.com," falsely alleging that its foot insoles products infringed the copyrights he had falsely claimed to own.

25. The fraudulent nature of Mokrian's takedown notices is also confirmed by the variety of addresses and phone numbers that Mokrian provided to Shopify on these takedown requests. In the notices, he claimed to reside in a variety of different locations across the United States, including: "818 Shadow Brook Street, Geneva, IL 60134"; "222 Woodside St., Collegeville, PA 19426"; "9873 Pumpkin Hill Dr., Marshalltown, IA 50158"; "842 North Foster Dr., Burnsville, MN 55337"; "9635 Harrison St., Huntersville, NC 28078"; "9675 Leeton Ridge Avenue, Enfield, CT 06082"; "9825 S. Brickell Street, Venice, FL 34293"; "9 Gates Street, Burbank, IL 60459." And, he claimed to possess a host of different phone numbers, including: "919-587-6104"; "918-733-1844"; "595-779-8839"; "578-906-1171"; "288-573-9351"; "298-542-6230"; "605-557-4511." Again, Mokrian attested that each of these representations was accurate.

26. On or around October 17, 2023, Shopify was alerted by a merchant targeted by the fraudulent notices about the misconduct perpetrated through the "Clayton Burns" account. Shopify conducted an investigation through which it determined that Mokrian is the real person responsible for sending the fraudulent takedown notices through the Clayton Burns/Burnz/Barns/Barn accounts. Mokrian is a Shopify merchant that operates at least two ecommerce stores through Shopify: TeraNue (teranue.com) and X-Care (byxcare.com).

27. It is plain that Mokrian submitted his fraudulent DMCA takedown notices for anti-competitive purposes. TeraNue—one of Mokrian's stores on Shopify—sells snore-reducing mouthguards. Through his takedown notices, Mokrian targeted the same or similar mouthguard products sold by competing merchants. X-Care—another Mokrian store on Shopify—sells foot insoles, the same type of product sold by Rizzsoles.com, a Shopify merchant Mokrian targeted with his false notices. Mokrian used takedown notices not in an effort to root out copyright infringement, but in an effort to root out competition.

28. Virtually every one of the representations Mokrian made in the takedown notices was knowingly false. The "Clayton Burns/Burnz/Barns/Barn" aliases are not his real name. The contact information provided in the notices is false. Mokrian does not own the copyrights that he claimed to own in his notices. His assertions of infringement are false and his assertions of authorization "under penalty of perjury" were perjurious.

## Harm from the Fraudulent Schemes

29. While Mokrian knew the assertions in his takedown notices were false when he made them, Shopify did not. Before it learned of Mokrian's scheme, Shopify processed many of his takedown notices consistent with the DMCA, removing the allegedly infringing content and assessing strikes to the accused merchants. In total, Shopify removed 38 products from its platform, albeit temporarily.

30. After discovering the fraud, Shopify re-enabled the affected product webpages and removed the strikes it issued based on the fraudulent notices.

31. Those efforts cost Shopify tens of thousands of dollars in personnel time and resources. The loss of goodwill that Shopify suffered from penalizing innocent merchants cannot be quantified.

## FIRST CAUSE OF ACTION

### Violation of 17 U.S.C. § 512(f)

32. Shopify realleges each and every allegation set forth in paragraphs 1 through 31, inclusive, and incorporates them by reference herein.

33. As the service provider that received Mokrian's bogus notifications of alleged infringement, Shopify relied upon Mokrian's false misrepresentations, removing or disabling access to the material Mokrian falsely claimed to be infringing.

34. Mokrian's abusive behavior has caused Shopify to expend substantial sums on its investigation to detect and halt that behavior, and on efforts to ensure that its merchants do not suffer adverse consequences from it.

35. Even if Shopify terminates Mokrian's existing fraudulent accounts (and it has already suspended use of those accounts), Mokrian's dedicated, long-term deceptive conduct suggests he will attempt to continue sending fraudulent takedown notices. Injunctive relief preventing future misconduct is necessary to prevent irreparable harm to Shopify in the form of lost customer goodwill. Accordingly, Shopify prays for the relief set forth below.

## PRAYER FOR RELIEF

Shopify prays for judgment against Mokrian as follows:

a) For an award of compensatory damages in an amount to be proved at trial arising from Mokrian's violation of 17 U.S.C. § 512(f);

b) For an award of its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 512(f);

c) For preliminary and permanent injunctive relief barring Mokrian and all those in active concert with him from submitting notices of alleged infringement to Shopify that misrepresent that material on the Shopify service is infringing copyrights held or claimed to be held by Mokrian or anyone he claims to represent.

d) For such other, further, and different relief as the Court deems proper under the circumstances.

## DEMAND FOR JURY TRIAL

Shopify requests a trial by jury.

DATED:  November 24, 2023         Respectfully submitted,

/s/ *Nathan M. Berman*
Nathan M. Berman
Florida Bar No. 0329230
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard, Suite 1200
Tampa, FL 33602-5838
Tel: 813-221-1010
Fax: 813-223-7961
nberman@zuckerman.com

David H. Kramer
(*pro hac vice* forthcoming)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: 650-320-4741
dkramer@wsgr.com

*Counsel for Plaintiff*
*Shopify Inc.*